UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICKY LEE SIROIS,                           )
                                            )
        Plaintiff                           )
                                            )
v.                                          )  1:12-cv-00028-DBH
                                            )
AL CICHON, et al.,                          )
                                            )
        Defendants                          )

**RECOMMENDED DECISION**

Ricky Lee Sirois, a federal prisoner awaiting trial in Bangor in connection with a charge

of conspiracy to distribute and possession with the intent to distribute oxycodone, United States

v. Ricky Sirois, 1:11-cr-00206-JAW-2, has filed a lawsuit against the Penobscot County Jail and

Captain Clukey, the jail administrator.  Sirois has also sued Al Cichon, a physician's assistant,

and Carmen Mullholland, a nurse, both of whom are employed as private contractors working at

the jail.  Sirois complains about the medical care, or lack thereof, while incarcerated at the jail.

He filed a number of motions for preliminary relief, attempting to obtain the desired treatments,

but those motions have been rendered moot because Sirois is now housed at the Cumberland

County Jail.  However, Sirois's Amended Complaint (ECF No. 12-1) also contains a request for

money damages.  The Penobscot County Jail and Captain Clukey have moved to dismiss (ECF

No. 43) the amended complaint and I now recommend that the Court grant their motion.

**Amended Complaint**

The current operative pleading in this case is the amended complaint (ECF No. 12), but it

appears that Sirois's preferred pleading style is to file a barrage of additional documents

containing new factual assertions even after submitting an amended complaint.  For purposes of

the pending motion to dismiss, I have considered Sirois's response to the motion (ECF No. 47)

and his supplemental response to the motion (ECF No. 49) in addition to the amended complaint, in trying to fairly ascertain the factual and legal basis for Sirois's theory of liability as it pertains to Captain Clukey and the Penobscot County Jail.  I describe the allegations as they pertain to the moving defendants.

Sirois arrived at the Penobscot County Jail on December 12, 2011, and immediately requested to see a nurse.  (Am. Compl. ¶ 1.)  He did not see a nurse until the next day.  (Id. ¶ 2.) He explained to the nurse that he was taking a lot of medications, including narcotics, and she told him to submit a medical slip and the doctor would see him in two weeks.  (Id.)  Someone at the jail told him that pending verification from his regular pharmacies, he would receive the same medication he had received at the Kennebec County Correctional Facility, consisting of Cymbalta and propanonol.  (Id. ¶ 3.)  Carmen Mullholland, one of the nonmoving defendants, called the two pharmacies where Sirois had done business for many years, but then she told him that he would not receive his medications until the jail received all of his medical records.  (Id. ¶¶ 4-5.)

Sirois met with the other named nonmoving defendant, Al Cichon, a physician's assistant, on December 23, 2011.  Sirois told Cichon about his bad migraine and severe upper and lower back pain.  Cichon gave him a physical and sent him back to his cell.  (Id. ¶ 6.)  Sirois saw the nurse again the next day and inquired about pain medications, but received no relief.  (Id. ¶ 7.)  Sirois felt terrible during this time and could not eat without getting sick.  He kept filing grievances and seeking medical attention, but the medical staff did nothing.  (Id. ¶ 8.)  Finally, on January 2, 2012, he saw the nurse again and told her he had the flu.  The nurse said his vital signs were normal and sent him back to his cell.  (Id. ¶ 9.)

After Sirois got back to his cell, a guard came and removed him to the "hole." (Id. ¶ 10.) The nurse said that Cichon had ordered Sirois into the "hole" for 72 hours on a liquid diet. (Id. ¶ 11.) While in the "hole" Sirois met another inmate who was there and that inmate was receiving oxycodone and a barbiturate, according to his report to Sirois. When Sirois explained his symptoms to the other inmate, the other inmate told him he was going through opiate withdrawal and the medical department should have given him his medications or properly weaned him from them. (Id. ¶ 12.) Sirois's liquid diet consisted of chicken broth, beef broth, and tea for 72 hours. (Id. ¶ 13.)

Sirois had also been complaining about his mental health issues to a mental health worker from Acadia Hospital who came to the jail. Those mental health issues included nerves, anxiety, paranoia, and agoraphobia. The mental health worker told him he was not getting his medication because of the nature of the charges against him. (Id. ¶ 14.)

On January 6, 2012, Sirois again saw Cichon. Cichon had all of Sirois's medical records, which he had apparently obtained without Sirois ever signing a release. After Cichon reviewed the records, he told Sirois that the only thing wrong with him was that he had arthritis in his back. Cichon said Sirois needed an anti-inflammatory (Celebrex) and Ultram. These were the two medications Cichon had previously prescribed to Sirois at the Kennebec County facility and they had been the subject of a prior lawsuit between Sirois and Cichon. Cichon knew these medications were inadequate. (Id. ¶ 15.) Sirois's medical records clearly show through four M.R.I.'s that he has more than arthritis in his back. (Id. ¶ 16.) His doctor in the Richmond, Maine area had been speaking with him about surgery for his back. (Id. ¶ 17.)

Sirois saw Cichon again on January 27, 2012, and at that time Cichon had a release signed so that he could obtain Sirois's records relating to a head scan. Sirois believes that all his

other medical records were obtained without a release and in violation of the privacy act.  (Id. ¶ 18.)  Sirois reported to Cichon that the Ultram and Celebrex were not helping with the pain and migraine headaches.  Cichon put him on another medication, Norontin, which Sirois previously had taken, although the medical records demonstrated that this medication did not help.  About a week later Sirois had stopped taking all three medications.  (Id. ¶ 19.)  Before seeing Cichon on January 27, Sirois asked the mental health worker for some medications and she told him that Cichon told her that Sirois was an addict and he was not getting any medications.  When he questioned Cichon about this statement, Cichon told him that personnel at the Kennebec County facility and at the Penobscot County Jail told him that Sirois was an addict.  (Id. ¶ 20.)

Sirois then met with Captain Clukey and talked with him about all of the grievances that Sirois filed about the medical care.  Sirois told Clukey he wanted to get another opinion from an outside doctor.  Clukey said that if he paid for the transportation there and back, Sirois could make an appointment and get a second opinion from an outside doctor.  Sirois believed that Cichon would have the final say in any event and Cichon was already going against the opinions of three of Sirois's prior physicians and an earlier physician's assistant.  Based on this fact Sirois decided not to waste his money on a second opinion.  (Id. ¶ 21.)  Sirois has told Cichon, Mullholland, and Clukey that he does not care if he gets Fentinol and Oxycodone for his pain. He will try any medication that works.  (Id. ¶ 22.)

Approximately one week prior to filing the amended complaint, on February 17, 2012, Sirois saw Cichon again, this time in regard to a piece of tooth that worked its way out of his gum.  Cichon again put him on a liquid diet and said the tooth would resolve without the need of a dentist's intervention.  (Id. ¶ 23.)  Then on the day he filed the amended complaint, Sirois received notification that his medical records had been reviewed again and the recommendations

4

were to restart the Neorontin and reintroduce the Celebrex and Ultram.  The medical department also suggested he consider the use of topical Capsaicin, but the use of controlled medications was not appropriate.  (Id. ¶ 24.)  He did not receive the new medications as suggested in a timely fashion.  (Id. ¶ 25.)

Sirois believes that Cichon is using his powers as a physician's assistant to retaliate against him because in 2005 Sirois tried to sue Cichon in connection with conduct at the Kennebec County facility.  He also believes that Cichon has claimed to be qualified as a mental health physician and counselor.  (Id. ¶ 28.)  According to Sirois, Cichon has the final say about prescribing medications at the Penobscot County Jail and that is improper because Cichon is only a physician's assistant and is not a specialist in head trauma, pain, mental health, or dentistry. (Id. ¶ 29.)  Cichon has lied and said he has not treated Sirois since 1995.  Cichon's conduct is malicious and intended to unnecessarily inflict pain on Sirois.  (Id. ¶ 30.)   Because of the deep antipathy Cichon holds told Sirois, Cichon has undertaken to get all defendants to agree with him about Sirois's medical care.

It appears that Sirois is bringing this action pursuant to the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1983, alleging the constitutional violation of deliberate indifference to serious medical needs.  At the conclusion of his complaint Sirois cites those three statutes and a series of court cases.  In an appended page he requests relief in the form of one million dollars from each defendant.

After having the benefit of reading defendants' motion to dismiss, Sirois filed a response with some additional pertinent allegations.  He explains that Clukey is the head jail administrator and hires and fires everyone who works at the jail.  Sirois also notes that all correspondence that was sent to the physician's assistant was copied to Clukey.  Sirois clarifies that his lawsuit

against Clukey and the Penobscot County Jail is based upon the fact that Clukey got all the

correspondence and "failed to remedy the wrong." (Response at 2, ECF No. 47.)  A few days

later Sirois provided the Court with a second response to the motion, again reiterating how

familiar Clukey was with his problems because of the grievance process and claiming, again, that

Clukey was grossly negligent in supervising subordinates. (Supp. Response, ECF No. 49.)

**Motion to Dismiss Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint can be

dismissed for "failure to state a claim upon which relief can be granted." In deciding a motion to

dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable

inferences in favor of the plaintiff that are supported by the factual allegations, and determines

whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv.,

Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a claim in federal

court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must

affirmatively plead "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In reviewing this complaint to determine whether it sufficiently states a claim to survive

these defendants' motion to dismiss I take all of Sirois's allegations as true. Buckley v.

Fitzsimmons, 509 U.S. 259, 261 (1993). Because Sirois is pro se I subject his submissions to

"less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S.

519, 520 (1972). Additionally, in view of Sirois's pro se status, I examined his other pleadings,

including his responses to the motion to dismiss, to understand the nature and basis of his claims

against these defendants. Gray v. Poole,  275 F.3d 1113, 1115 (D.C. Cir. 2002) (citing the

holding of Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999) that District Court

abused its discretion when it failed to consider a pro se plaintiff's complaint in light of his reply

to a motion to dismiss).

## Discussion

Although Sirois mentions the Americans with Disabilities Act and the Rehabilitation Act,

his complaint is fundamentally a constitutional claim of deliberate indifference to serious

medical needs.[1]  Two cases by the United States Supreme Court frame the deliberate indifference

inquiry:  Estelle v. Gamble, 429 U.S. 97 (1976), and Farmer v. Brennan, 511 U.S. 825 (1973).

The Estelle Court identified in the Eighth Amendment protection the "government's obligation

to provide medical care for those whom it is punishing by incarceration."  429 U.S. at 103.  It

observed:  "An inmate must rely on prison authorities to treat his medical needs; if the authorities

fail to do so, those needs will not be met."  Id.  Unnecessary suffering caused by denial of

medical care is "inconsistent with contemporary standards  of decency."  Id.  The Court stated:

> We therefore conclude that deliberate indifference to serious medical needs of
> prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed
> by the Eighth Amendment.  This is true whether the indifference is manifested by
> prison doctors in their response to the prisoner's needs or by prison guards in
> intentionally denying or delaying access to medical care or intentionally
> interfering with the treatment once prescribed. Regardless of how evidenced,
> deliberate indifference to a prisoner's serious illness or injury states a cause of
> action under [§] 1983.

---

[1]      As defendants point out in their footnote (Mot. Dismiss at 3 n.1, ECF No. 43), Sirois does no more than make a passing reference to these two statutes in the amended complaint and again in his response, i.e.: "The plaintiff also filed complaints not only under USC 1983, but also under Rehabilitation Act Americans with disabilities." (Response at 2, EFC No. 47.)  I am at a loss as to how those statutes would apply to claims against Captain Clukey and the Penobscot County Jail on the facts alleged.  Clearly this is not an employment discrimination case.  Perhaps Sirois thinks he is alleging that he was denied participation in or access to some program or activity made available to nondisabled individuals (assuming Sirois has alleged that he is disabled), but I am unable to ascertain what that program or activity might be.  I cannot invent a claim when none has been developed by the litigant.  Mr. Sirois's passing reference to the supposed claim in his opposition is insufficient to preserve any claim.  See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 19 (1st Cir. 2009) ("[I]ssues adverted to . . . in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned") (internal punctuation and citations omitted);  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or forever hold its peace.") (internal punctuation and citations omitted).

Id. at 104-05 (footnotes and citation omitted).

Estelle made clear that "inadvertent failure to provide adequate, medical care" does not rise to the level of a constitutional violation" and that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 105-06. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

In Farmer, the Court more clearly articulated the standard a plaintiff must meet to hold a prison official liable under the Eighth Amendment. It identified two elements. First, the alleged deprivation must be "objectively 'sufficiently serious.'" 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the defendant must have a culpable state of mind, which means in prison conditions cases, that the defendant was deliberately indifferent to the inmate's health or safety. Id. To demonstrate that medical care provided by prison officials violates a prisoner's right under the Eighth Amendment to be free from cruel and unusual punishment, it is not sufficient for a prisoner to prove only that he has not received adequate medical care. He must also prove that the officials responsible for his care intentionally ignored a serious medical need or were deliberately indifferent to it. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497-498 (1st Cir. 2011).

As always, under the pleading standard it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant(s) subjected the plaintiff to a harm for which the law affords a remedy. Iqbal, 556 U.S. at 678. In dealing with a motion to dismiss such as this one, I am not bound to accept mere legal conclusions "couched" as a factual allegation. Id.

8

*Municipal claims against Penobscot County*

Sirois implies that the Jail[2] should be held liable for unconstitutional conduct by jail

officers.  Under Section 1983, municipalities cannot be held liable for constitutional violations

perpetrated by municipal employees simply because they are the employers and have conferred

state-actor status upon their employees.  Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008)

(citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978)).  Section 1983 claims against a

properly named municipal defendant will only be successful if that entity was responsible for a

policy, custom, or practice that caused the violation alleged.  Id.  Assuming the presence of an

underlying deprivation, proof of a municipal custom or policy claim involves two additional

elements:

> First, the custom or practice must be attributable to the municipality, i.e., it must
> be "so well settled and widespread that the policymaking officials of the
> municipality can be said to have either actual or constructive knowledge of it yet
> did nothing to end the practice."  Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st
> Cir. 1989).  Second, the custom must have been the cause of and "the moving
> force" behind the deprivation of constitutional rights.  Id. at 1157.

Miller v. Kennebec Cnty., 219 F.3d 8, 12 (1st Cir. 2000).  The first of these additional elements

is sometimes referred to as "deliberate indifference," particularly in the context of a failure to

train theory.  Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005).  Again, assuming

Sirois adequately alleged facts to support unconstitutional conduct by jail officers, it does not

automatically follow that the County is vicariously liable based upon the conduct of its

employees.  See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) ("We

have consistently refused to hold municipalities liable under a theory of respondeat superior.").

Sirois provides no factual allegations that would support a plausible inference that

Penobscot County had a custom or policy of depriving inmates of necessary medications.  In

---

[2]     The Penobscot County Jail is a building.  I will assume that Sirois intended to sue the governmental entity, Penobscot County, which would be the same thing as suing any other such entity, including municipalities.

9

fact, he alleges that one of the inmates in the jail with him was receiving the very medications he wants to have prescribed. He has failed to allege a policy or custom complaint against Penobscot County and his complaint fails to state a claim as to the county itself.

### *Claims Against Captain Clukey*

The claims against Clukey appear to be of two types. First, Sirois complains that as "captain of the ship" Clukey is responsible for the way Cichon and Mullholland "medically mistreat me." (Response at 1, ECF No. 47.) His second type of complaint centers around Clukey's personal involvement, in that Clukey met with him and received copies of all of his grievances and correspondence concerning the medical treatment issues and nevertheless remained deliberately indifferent to Sirois's physical and emotional distress. His first claim quickly goes by the board. The First Circuit has observed that it is "axiomatic that the doctrine of respondeat superior does not apply to claims under section 1983." Gaudreault v. Salem, 923 F.2d 203, 209 (1st Cir. 1990).

The only remaining avenue for an individual capacity claim against Clukey would be in his role as supervisor. The only direct involvement by Clukey with Sirois was that Clukey met with Sirois to listen to his grievances about medical care. Mere knowledge of a subordinate's wrongful conduct, assuming Cichon and Mullholland were subordinates and assuming their conduct was wrongful, cannot establish section 1983 liability for a supervisor. Rather, there must be an affirmative link between the conduct of the supervisor and the constitutional deprivation experienced by the plaintiff. See Sanchez v. Pereira-Castillo, 590 F.3d. 31, 49 (1st Cir. 2009); Maldonado v. Fontanes, 568 F.3d 263, 274-75 (1st Cir. 2009). Examples of affirmative links include "supervisory encouragement, condonation or acquiescence" in relation to the deprivation. Maldonado, 568 F.3d at 275 (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st

Cir. 2008)).  Deliberate indifference can also result in supervisory liability.  Id.  There is no

factual support for the theory that Clukey encouraged, condoned, or even knew Cichon's

retaliatory motives against Sirois because of the prior lawsuit between Cichon and Sirois.  The

only basis for liability would have to arise from Clukey's alleged deliberate indifference to

Sirois's pain based upon the knowledge he received from Sirois's self-reports and Cichon's

medical reports.

The amended complaint does not allege that Clukey himself denied Sirois medical care or

that he refused to afford him access to medical care.  Sirois's allegations themselves suggest that

Sirois received a considerable amount of medical attention while at the Penobscot County Jail

and that Clukey deferred to the judgment of medical professionals to determine what

medications would be appropriate to treat Sirois's headaches, back issues, and mental health

problems.  Since Sirois's allegations reflect that Clukey responded to his concerns (albeit not

with the relief that Sirois sought), he could not be found to be deliberately indifferent simply for

respecting the judgment of the medical providers at the jail.  See Berry v. Peterman, 604 F.3d

435, 440 (7th Cir. 2010) ("As a non-medical administrator, [the jail administrator] was entitled to

defer to the judgment of jail health professionals so long as he did not ignore [the inmate].");

Durmer v. O'Carroll, 991 F.2d 64, 69 (3rd Cir. 1993) (holding that prison warden could not "be

considered deliberately indifferent simply because [he] failed to respond directly to the medical

complaints of a prisoner who was already being treated by the prison doctor").  I am satisfied

that the allegations against Clukey do not amount to a claim of deliberate indifference based

upon the personal knowledge that Sirois says Clukey had of his plight.  After all, Clukey was

willing to allow Sirois to obtain the assistance of an outside medical provider if Sirois was

willing to pay for the transportation.  Sirois was not without funds, as he was able to assemble

11

the filing fee in order to bring this lawsuit.  He might have chosen to use his resources to obtain

an additional medical opinion, with Clukey's blessing.  His allegations simply do not support a

deliberate indifference claim on the part of a jail administrator.

## Conclusion

Based upon the foregoing I recommend that the Court grant the defendants' motion to

dismiss (ECF No. 43) and dismiss Captain Clukey and the Penobscot County Jail from this

lawsuit.

### NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, within fourteen (14) days of being
served with a copy thereof.  A responsive memorandum shall be filed within
fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

June 12, 2012                                    /s/ Margaret J. Kravchuk
                                                 U.S. Magistrate Judge