UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| RICKY LEE SIROIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:12-CV-00028-DBH |
| | ) | |
| AL CICHON, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION**
**RE:  MOTION TO DISMISS (ECF NO. 55)**

On June 12, 2012, Carmen Mulholland[1] moved for dismissal of the amended complaint (ECF No. 12) relating to all allegations against her.  The basis for Mulholland's motion was that the complaint failed to state a claim.  Mulholland and co-defendant Al Cichon also jointly moved to dismiss portions of the amended complaint which purported to assert claims under the Americans with Disabilities Act and the Rehabilitation Act.  They have also moved to dismiss any state law claims based upon negligence and/or medical malpractice due to Sirois's failure to comply with the provisions of the Maine Health Security Act, 24 M.R.S. §§ 2501 et seq.  I now recommend that the Court grant the motion (ECF No. 55).  In the event the Court accepts this recommendation, Sirois's primary claim that Al Cichon violated his constitutional rights because of his deliberate indifference to Sirois's serious medical needs will remain as a viable claim and will proceed with discovery and ultimate resolution either through summary judgment or trial.

---

[1]  My spelling of Mulholland conforms to the spelling used by her counsel;  three "l's" instead of four.

## Pertinent Amended Complaint Allegations[2]

Ricky Sirois was admitted to the Penobscot County Jail on December 12, 2011. (Am. Compl. ¶ 1.) At the time of his admission he was taking a lot of narcotics for pain and he immediately requested assistance from the medical department. (Id. ¶ 2.) Carmen Mulholland is first mentioned in the fourth paragraph of the amended complaint. According to Sirois he met with her on an undisclosed date and as a result of that meeting Mulholland called his pharmacy in Randolph, Maine. She told Sirois that the pharmacist knew him by name and "that it was pretty bad the pharmacist knew me by name!" (Id. ¶ 4.) Mulholland informed him that he was not going to get any of his medication until the jail had received all of his medical records. (Id. ¶ 5.) On January 2, 2012, Mulholland saw Sirois again, this time because Sirois complained of the flu. Mulholland said his vital signs were normal and sent Sirois back to his cell even though he had cold sweats. (Id. ¶ 9.) Then Sirois was placed in the "hole"[3] for seventy-two hours. (Id. ¶ 10.) Sirois saw Mulholland later that evening and she told him that she had called Cichon and Cichon had ordered Sirois placed in the "hole" for seventy-two hours and put on a liquid diet. (Id. ¶ 11.) Sirois alleges that his liquid diet and placement in the "hole" was done "per order Carmen Mulholland and Al Cichon." (Id. ¶ 13.) Sirois explained his medical condition to both Mulholland and Al Cichon, including his headaches and lower back pain that shoots into his left arm and left leg. (Id. ¶ 15.) At some point Sirois told Mulholland, as well as Captain Clukey

---

[2] There are many additional allegations in the complaint pertaining to the care and treatment by physician's assistant Al Cichon. But Cichon has not moved to dismiss the entire complaint recognizing the need to develop an evidentiary record related to many of these claims and therefore I have not restated those allegations here. It is anticipated that Cichon will file a dispositive motion once this motion has been decided and the discovery related issues have been resolved.

[3] Sirois describes confinement in the "hole." The defendants refer to "observation." (Mot. to Dismiss at 6, ECF No. 55.) Viewing the allegation in the light most favorable to Sirois, it appears he was placed in segregation or an isolation cell where he would be more closely monitored and restrained.

and Al Cichon, that he did not care if he received the "fentinol" [sic]⁴ and oxycodone, his drugs of choice for pain. He was willing to try anything that would work to alleviate his pain. (Id. ¶ 23.) Al Cichon, a physician's assistant, has the final say about prescribing medications at the Penobscot County Jail. (Id. ¶ 29.) Mulholland is sued under "the Captain of the ship doctrine" because she allowed Cichon to make decisions about Sirois's care and clearly Cichon had a conflict of interest. (Id. ¶ 30.) Sirois received information from the medical department that after their review of the situation their current plan of care was for Sirois to receive neorontin, tapering upwards to the maximum dosage, Celebrex, and Ultram, and were considering the use of topical Capsaicin as well. Use of controlled substances was considered inappropriate. (Id. ¶ 24.)

## Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face." Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "A

---

⁴ Sirois may be referring to fentanyl. "Fentanyl is a powerful synthetic opiate analgesic similar to but more potent than morphine. It is typically used to treat patients with severe pain, or to manage pain after surgery. It is also sometimes used to treat people with chronic pain who are physically tolerant to opiates. It is a schedule II prescription drug." http://www.drugabuse.gov/drugs-abuse/fentanyl (last visited September 21, 2012).

claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). A plaintiff's complaint need not provide an exhaustive factual account, only "a short and plain statement." However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 129 S. Ct. at 1949.

When the plaintiff is a pro se litigant, the Court will review his or her complaint subject to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Additionally, the pleadings of pro se plaintiffs are generally interpreted in light of supplemental submissions, such as any response to a motion to dismiss. Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003). In some circumstances, if it appears that a pro se litigant might be able to plead adequate facts if he or she better understood the applicable law, the Court may provide some opportunity to understand what the law requires, along with an opportunity to supplement the pleadings, all in order to avoid a scenario in which a pro se plaintiff's claims are summarily dismissed with prejudice based on a failure to plead sufficient facts. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004); Cote v. Maloney, 152 Fed. Appx. 6, 8 (1st Cir. 2005) (unpublished).

*The Constitutional Claims Against Carmen Mulholland*

The nonconclusory factual allegations against Carmen Mulholland are sparse. Scouring Sirois's nineteen-page Response to this motion (ECF No. 68) and various other pleadings, Mulholland appears to be mentioned on only pages four and five of the Response. Sirois's only elaboration is that he relates that upon admission he gave Mulholland a list of nine medications he was taking and she told him she would see to it that he got his "meds." Mulholland

apparently spoke to Sirois's two pharmacies.  She also told him that concerns about his mental health status would have to be addressed through the mental health experts and that he should put in a medical slip requesting a mental health consultation.  He also advised Mulholland of the names of all his doctors.  Sirois reiterates in his response that "after the nurses and Mr. Cichon got tired of me complaining about it [his withdrawal symptoms] Mr. Cichon stuck me in solitary confinement on a liquid diet and to be observed.  (Id. at 7.)  Nothing in his response that I can find advances a claim of deliberate indifference against Carmen Mulholland nor does Sirois offer any legal argument that would support a theory that Mulholland should be liable for the numerous constitutional violations he alleges were committed by Cichon.

The denial of necessary medical care can rise to the level of an Eighth Amendment violation.  See, generally Farmer v. Brennan, 511 U.S. 825 (1994); Estelle v. Gamble, 429 U.S. 97 (1976).  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (citation omitted).  However, negligence and medical malpractice are not actionable as constitutional violations.  Daniels v. Williams, 474 U.S. 327 (1986) (noting that 42 U.S.C. § 1983 provides a right of action for civil rights violations and cannot be used to sue correctional officials for negligence);  accord Estelle, 429 U.S. at 105-06.

In Farmer v. Brennan the Court clarified that a claim of deliberate indifference has an objective and a subjective component.  511 U.S. at 834.  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  In this regard, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Second, the prison official must have a "'sufficiently culpable state of mind.'"  Id. (quoting

5

Wilson, 501 U.S. at 297).  In prison-conditions cases such as Sirois's "that state of mind is one of 'deliberate indifference' to inmate health or safety."  Id. (quoting Wilson, 501 U.S. at 302-303).

Sirois's theory that Mulholland is liable as the "Captain of the Ship" is a nonstarter.  Sirois cannot maintain a section 1983 action based on the theory of respondeat superior.  Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011).  Furthermore, on these pleadings it is not "plausible on its face" within the meaning of Iqbal that Nurse Mulholland even had any supervisory role over Cichon's decision making.  Sirois repeatedly alleges that Cichon was the individual with the motive to deliberately subvert his medical care and that Cichon was the person responsible for all of the unnecessary infliction of pain, including placement in "the hole," i.e., solitary confinement for observation.

Turning to the specific factual allegations made against Mulholland, they simply do not rise to the level of deliberate indifference.  She made initial inquiries about his medications from his pharmacies and physicians.  She examined him for flu-like symptoms, found none, and alerted the physician's assistant, Cichon, of the situation.  She followed Cichon's directive about placing Sirois in isolation.  Viewing these allegations in the light most favorable to Sirois, an inference could be drawn that the placement in segregation and on a liquid diet was done for punitive reasons rather than for medical ones and that could suggest a deliberate indifference claim against Cichon.  However, Mulholland's role, as described by Sirois, was limited to calling Cichon and advising him of Sirois's report of flu-like symptoms and then arranging with the jail guards to implement Cichon's directive that Sirois be placed in isolation.  The entire collection of factual statements concerning Mulholland do not contain any allegations or statements that suggest deliberate indifference to serious medical needs.  The only comment that could possibly be read with a negative connotation concerns her alleged observation about the pharmacist

6

knowing Sirois by name. While such a comment might be viewed by some as unprofessional, it does not give rise to a plausible inference of deliberate indifference to a serious medical need.

### *The ADA and Rehabilitation Act Claims Against Mulholland and Cichon*

Sirois mentions both the Americans with Disabilities Act and the Rehabilitation Act in his list of available remedies. (Am. Compl. at 11-12.) In all of his voluminous filings he never explains exactly what his claimed disability is, other than the pain associated with a back injury he suffered many years ago. To state a claim under these federal anti-discrimination statutes a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Parker v. Univ. de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000). See also Buchanan v. Maine, 469 F.3d 158, 174 (1st Cir. 2006) ("The Rehabilitation Act and ADA do not guarantee any particular level of medical care for disabled persons.") (punctuation and citation omitted); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (noting that the "ADA does not create a remedy for medical malpractice"). Sirois's pleadings do not explain the nature of his ADA and Rehabilitation Act claims and this Court might fairly conclude that based on his limited showing he has abandoned any such claims. Even if he has not abandoned the claims, his Amended Complaint fails to state a claim for a violation of either statute because Sirois has made it abundantly clear that his complaint relates solely to the level of medical/pharmaceutical services he received.

*The Medical Malpractice/Negligence Claims Against Mulholland and Cichon*

Sirois has not alleged compliance with the notice of claim and prelitigation screening provisions of the Maine Health Security Act. The Maine Health Security Act provides:

No action for professional negligence may be commenced until the plaintiff has:

A. Served and filed written notice of claim in accordance with Section 2853**;**

B. Complied with the provisions of subchapter IV-A; and

C. Determined that the time periods provided in section 2859 have expired.

24 M.R.S.A. § 2903(1). The "provisions of subchapter IV-A," referred to in Section 2903(1)(B), are Sections 2851 through 2859 of the Act, which govern the formation of prelitigation screening panels, the submission of malpractice claims to those panels, the conduct of panel hearings, and the effects of panel findings.

The Health Security Act defines the term "action for professional negligence" as: "Any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S.A. § 2502(6). A defense of failure to comply with the notice and screening provisions of the Health Security Act is analogous to a defense predicated on insufficient service of process or lack of subject matter jurisdiction. <u>Dutil v. Burns</u>, 1997 ME 639, ¶ 5, 687 A.2d 639, 641. This court reviews these state law claims through the same prism as would any Maine state court. To the extent Sirois is suing either of these two defendants for negligence, malpractice, or medical decisionmaking other than allegations of deliberate indifference to a serious medical need within the <u>Farmer v. Brennan</u> framework, he must comply with prelitigation requirements of the Maine Health Security Act.

8

The federal court in the District of Maine has recognized this procedural mechanism for many years and has acknowledged that litigants may not proceed in this court without complying with the law's prelitigation notice and screening provisions.  See Hewett v. Inland Hosp., 39 F. Supp. 2d 84 (D. Me. 1999);  Chapman v. Me. Dep't of Corrs., No. 1:04-cv-00103-DBH, 2005 WL 3448011, 2005 U.S. Dist. Lexis 33232 (D. Me. Dec. 14, 2005).  Sirois has not alleged that he complied with the Act and, in not responding to the defendants' motion on this score he has not countered their assertion that he has not complied.  Therefore, the motion to dismiss the complaint without prejudice as to the state law claims should be granted.  Pursuant to the Health Security Act, Sirois's failure to comply constitutes a bar to a civil action against the provider, both in state court and in the federal court in the District of Maine in both prisoner and nonprisoner litigation.  Demmons v. Tritch, 484 F. Supp. 2d 177, 179 (D. Me. 2007).  Because Sirois has not complied with the provisions of the Health Security Act, the state law claims, if any, set forth in Sirois's Complaint are premature.[5]  Kidder v. Richmond Area Health Ctr., Inc., 595 F. Supp. 2d 139, 142 (D. Me. 2009).

## Conclusion

Based upon the foregoing I recommend that the Court grant the motion to dismiss all constitutional claims with prejudice as to Mulholland.  As to Cichon and Mulholland, I recommend that the Court dismiss with prejudice any claims under the ADA and the Rehabilitation Act and dismiss without prejudice any malpractice claims pursuant to the Maine Health Security Act, which is the proper procedural vehicle for the initiation of state complaints about negligent health care.

---

[5]  I am not entirely sure that Sirois's claims against Cichon and Mulholland are based on negligence or medical malpractice, but the defendants have moved for dismissal on this basis and I have therefore addressed the issue.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

September 21, 2012                            /s/ Margaret J. Kravchuk
                                              U.S. Magistrate Judge